Carr, J.
I have examined the evidence of the arbitrators with great care, and I cannot discover any thing in their conduct, which, according to the principles laid down in Graham, v. Pence, and the cases there cited, can be held to amount to misbehaviour. In the case of Walker v. Frobisher, cited at the bar, the arbitrator, after hearing a good deal of evidence, gave notice to the parties, that he should hear no more, in which they acquiesced ; but, afterwards, he examined three witnesses on one side, of which he gave no notice to the other party; and for this lord Eldon (while he acquitted the arbitrator of all intentional wrong) decided, that, on general principles, the award must be set aside. In Graham v. Pence, the arbitrators had a meeting, and the defendant asked a continuance for an absent witness, which the arbitrators granted, and then determined to have nothing further to do with the case, and drew up a writing to that effect, which they communicated to the parties; but, after-wards, the plaintiff had a private, ecc parte conversation with one of the arbitrators, and prevailed on him to resume the arbitration, and then gave notice to the defendant to attend at a certain time and place: the defendant went, and protested against the arbitrators acting further : he said they had divested themselves of all authority, and that they must return that fact to the court; and so left them. They notwithstanding this went on, and made up an award against the defendant without having his defence, or evidence before them; and for this the court set aside their award. But what have the arbitrators done, in the case before us, which in any respect resembles this ? what act that looks like partiality or a departure from duty? The parties were before them; had a full hearing; submitted their evidence, and were willing that the award should then be made. The arbitrators, however, were not ready: they required time to satisfy themselves. Dunn says, that May expressed a wish, that if the *369 arbitrators did not decide before he left Richmond (he living in Staunton) they should not make up their award until he could be again before them; but Dunn’s understanding of this was, not that he wished to introduce further evidence, but merely to make further remarks and explanations. Smith, the other arbitrator, says, that he heard no wish expressed by May, to be heard again, and that he does not think he could have forgotten such a circumstance; that both parties left the arbitrators with the expectation that the award would be formed upon the evidence and the explanations then given; and both arbitrators agree, that they gave no promise, nor appointed any future time, for another hearing. Now, suppose Dunn’s recollection perfectly accurate, to what does it amount ? merely, that May wished (if they did not then decide) to make further arguments before them. Did this wish impose an obligation on the arbitrators, to hear him further ? Surely not, unless they should find it necessary to their decision. But the arbitrators agree, that their first intention was to make up the award, so as to be ready for the February term of the hustings court; and that they, being much pressed by Yancey, departed from -this intention, and made it on the 16th January. Was there any misbehaviour in this ? I cannot think so. Yancey had no conversation with them on the subject matter of the arbitration : he merely expressed the wish, that whatever was to be done, might be done without delay: he claimed a sum of money, which to him, no doubt, seemed considerable : he had been at law for it many years: and under these circumstances (though it might not be very delicate) it was quite natural, that he should press to have the business finished. But the arbitrators do not intimate, that this urgency caused them to hurry over or slight the business at all. The first hearing, when the parties were before them, was in the first week of December; and they did not make their award till the 16th January, nearly six weeks after. Surely, this was time enough; and they tell us, they had the documents, first before the one, and then the other, till they were satisfied; and *370 then met, and made the award. As to the letter written by ^-ay t0 Dunn’ that can have no effect on the case. It was not written till the 25th January, sometime after the award was made and returned to the clerk’s office; and even in that letter, he speaks of no new evidence. It consists almost intirely of a long argument on the merits of the case, very improperly addressed to one of the arbitrators. As ' little influence is due to the declaration of Dunn, that May had since shewn him evidence, which, if it had been before him, would have changed his opinion, unless counteracted by other evidence ; for, in the first place, the question before us, is as to the misbehaviour of the arbitrators, upon which this evidence, never before them, can have no bearing; and secondly, if we could be at all influenced by this evidence, it ought to have been filed in the cause. We can never agree, to take the opinion of the arbitrator as to it. Upon the whole, I can see nothing like misbehaviour in the arbitrators, or injustice to the defendant, and am clear that the judgements should be affirmed.
Cabelu and Brooke, J. concurred.
Tucker, P. said, he inclined to the opinion, that the judgements were erroneous; but as the other judges were clearly of opinion that they were right, and as the question, in his view of it, was a question of fact on the evidence, it was unnecessary to assign the reasons on which his impressions were founded.
Judgements affirmed.